May it please the Court, Heather Guerino on behalf of Appellant Ernest Castle Woods, II. I'd like to reserve three minutes for rebuttal. District Court committed reversible error by failing to properly apply the limited inquiry in 1915g and failing to find that Mr. Woods adequately pled imminent harm of serious physical injury in two distinct ways. First, that by misclassifying him as a sex offender, they put him at risk of being stabbed and threatened and potentially killed. The second is that by failing to provide adequate medical care, he was put at risk of injury and by failing to provide the surgeries that he requested. 1915g is a threshold question. It's supposed to be extremely limited. It's not supposed to go into the merits of the action. And this Court has cautioned that it's not supposed to be an overly detailed inquiry. That it's not the Court's position to determine whether or not it's serious enough, whether or not there's enough beatings. It's only whether there has been allegations to show that there is some conduct that creates an ongoing risk of harm. As to the first point that Mr. Woods has raised, being misclassified as a sex offender is known to be something that creates imminent harm. So is it being misclassified or just being classified? Would every sex offender be able to challenge their classification if they ruled for your client? No, Your Honor. They would have to be alleging something where the relief that they can seek in the Court is something that could be granted. In this case, misclassification is Mr. Woods' complaint because by misclassifying him, the Inspector General has acknowledged that sex offenders are more likely to be assaulted, they're more likely to be in the subject of bias, and they're more likely to be killed. And so by misclassifying him, they've put him at risk. And that is how much more likely does it need to be for the risk to be enough to get around your three strikes? All that he has to plead is that there is risk of injury, and then it moves to the next screening stage. Well, is that right? Is it risk of injury or is it imminent risk of serious injury or something like that? Is it at a higher standard than that? I mean, everyone has a risk of injury. I have a risk of injury every time I cross the street. So how do we know that this risk of injury is enough? As the Court said in Andrews, that as long as the pleadings make a facial allegation, a plausible allegation, that they're going to be injured. And Williams' court dealt with this specific issue of sex offenders and misclassification, and it found that it was appropriate that because there was threats and a likelihood of being beaten, that that was sufficient. We don't know what those threats do to the inmate herself. This is for those who love what is alleged here or not alleged here from what we have on these courts. Mr. Woods alleges that he was at risk of being stabbed and that he's an ongoing imminent harm. The difference in Williams is that she was given an opportunity to submit a briefing at an OIC, and Mr. Woods was not permitted to have that same opportunity, and if he was given that opportunity, he could submit a declaration and make similar allegations to what Ms. Williams has asserted. Yeah, I mean, I don't understand the answer to Ms. Williams' first question, which was, why does law supply to anybody who's classified as a sex offender? I mean, we don't classify people as sex offenders. You can't just say, like, they're getting stabbed, they're getting put in danger as a by-product of being classified. Why couldn't anyone say, well, I've been classified as a sex offender. I'm now in danger. I get fired. But there's a difference between being classified and actually being a sex offender, and the prison system has known Mr. Woods for— I'm sorry. Do you know if he's been classified as a sex offender? No, I don't. What is the difference? The difference is that there's an access between what's being alleged and what's being alleged. I'm a sex offender. I'm in danger. I should not be exposed to this. I didn't have any successful training, but why wouldn't this be exactly the kind of claim that, I mean, in that regard, being an exposed sex offender, being a— let's say, for instance, you feel that you just know business and that they can't pay for your injuries or anything else. And I would submit, Your Honor, that that's correct. And if they could assert a claim in the second phase as to whether or not the court could grant relief to assist in removing that imminent danger, then the case would proceed in the same manner. But the state has full protection of every woman, who are alleged to be classified as a sex offender. And those—we have to look at the phrase that we're in, in the review. PLRA— Individual sex—individual employees that try to apply to a class, which is always a—because your client is not actually documented, or at least not on these papers, gotten their full status out. You say that, but who knows? Right. Maybe it's true. Maybe it's— She has a question. Since you're at that point, I understand. You know, your client is telling you things that could be true, that could be false. So, how is he different from anybody else in that class? And how are you, at that point, opening up? Is it by your argument that we're not opening up the whole class-wide exceptions to the state's rights rule? You're not opening up class-wide exceptions, because this is only the first of two pre-screening phrases that likely happen in C-section. One is that you're in imminent physical harm, and the second is that you can actually see the client's past merit. And so, the court has to permit people to be able to come in and seek relief when they are actually in imminent harm. And then whether or not the court can grant that relief can be addressed at the second stage. So, what would be wrong for you and for your client's future safety with us saying you can't do an imminent harm exception unless you have more allegations? I mean, he's not going to be able to win without more allegations. He's eventually going to get to tell the court, so if we say, look, you need more allegations, this case has to be dismissed. He gets another strike, but he files it again with more allegations, and he convicts him, and he gets that one through. What's the difference? Because in this case, sex offenders are so much more at risk. But you're probably going to catch 22 once he's mislabeled as a sex offender that what you're suggesting is that he has to wait to actually get stabbed or get the threat, and it puts him at risk of being killed when he should be able to seek relief immediately. So, he's not at risk. This is a situation where the prison, what he's alleged, is that the prison has put him at more risk than he would be on his own. If a rapist is a sex offender, and it is their current status that gives them the point that they are at risk, in Mr. Wood's case, he's pleading that if he was labeled properly, he would not be at risk at all. And it is the prison that has done something that puts him at risk, and therefore he should be able to plead that. And because of how high it's double that sex offenders are going to be at risk of being killed, that he shouldn't have to be stuck in a catch-22 where someone has to make the threat, and have to reserve the rest of his lifetime. Thank you. May it please the Court, The Owen for Warden Adams. Do you think that danger and deception is a crime? Virginia, when I received your case, is where crime is of the essence. And the potential consequence is serious physical harm. In this case, the R-subjects by itself poses no danger to any inmate. In fact, the R-subjects is merely an internal use by prison officials to help an internal ward to help inmates the same way they use codes. Well, he alleges that these things are known to other inmates. I don't know how this happens, but I'm also just saying it's happening to a person that I can't imagine. It probably happened because the R-subjects came to prison, so I don't know how they do it. But obviously, things happen that are not supposed to happen in prison. And he claims that this classification is known, or can be known by prison, by the prisoners. And it's not impossible, really, that people are viewed as being so classified, young, and the case is more dangerous. What else can you say? For example, in the case of Williams v. Crowell, the inmate alleged that a prison official spread rumors about her being a sex offender. And in response to that rumor, she actually received threats from members of the Tupac prison gang. In this case, we have no such allegations. Mr. Woods simply relied on this sort of generic allegation that sex offenders are at increased risk for harm. And that also presupposes that all sex offenders are equal. Not so. Mr. Woods is classified as a sex offender not because of child molestation, for example, but instead he has a doctorate. But the other inmates wouldn't know that, would they? Isn't the R a general designation? The R-subject is for interior use only. So inmates wouldn't know about it unless someone else. But he alleged that they will, so now we have to take that as given for purposes of the question to discuss. But he makes no allegations that, for example, that inmates who have a history of masquerading in front of penal officers, as in this case, that that classification or that history poses an imminent threat to his safety. I think that's his point, right? So his point is he started a designation that makes it seem like he's rapist or child molester or whatever, and in fact he says it's not. So it seems to me that your argument kind of goes in his favor. Well, what's not really missing from Mr. Woods' complaint, and many complaints, the objections to the R-over is he makes no allegations and he makes no allegations of classification history. Could you say that again? I don't understand what you just said. He makes no allegations, and he made this clear as well, including the objections to the report and recommendation that inmates know about his classification. For example, in Williams, the inmates allege him to be showing that staff there spread rumors about her under her designation. We have no such allegations in this case. Well, he hasn't alleged any threats, but hasn't he alleged that the R does put inmates at more risk because other inmates do generally know? I mean, he's alleging it as a general matter anyway. So as you just used for a category exemption for sex offenders, he also assumes that, you know, for example, in 2013 when Mr. Woods filed his complaint, we had about roughly 21,000 inmates who are required to register, in other words, testified as sex offenders in the prison system. And I don't think he can plausibly say that all 21,000 inmates are walking around at that time in the danger. So how do you respond to the odds? And it's really two arguments that if it is known as a general matter that they're at risk because of the prison classification that others know in, but you have to wait for some actual harm to you before you can show the evidence of the physical harm that's required to get past this risk. How do you respond to that? Well, my response, rather, is we give these officials a chance to address the risk. He makes no allegations in this case that there's an imminent threat to safety, that he told prison officials that there was such a threat and that they did nothing. As was the case in Williams, which, you know, she allegedly told prison officials that there was a threat to her safety and there's nothing done. So how do we know? So your prior statement was that it's impossible that all 21,000 inmates are at risk. How do we know that? Well, otherwise we would have an increasing force of inmates dying. Well, maybe we do. I mean, we do have lots of violence in prisons, right? I mean, how do we know that they're not at risk? I mean, we do recognize that there's risks to inmates on any given day. The statute, you know, the qualifiers, number one, the danger has to be imminent. And second, the risk of harm has to be serious. Otherwise, it would allow inmates to just give this generic allegation of imminent danger, that virtually everyone can call upon, including gang members and rival gang members at the prison. And, or any inmate in a level four prison. And the other thing that kind of cuts in this too, is to leave out the imminent danger as timeliness. The key message is, you can quote, as the allegations concern events between 2007 and 2009. That goes to the medical care, right? After the sex offender status. In 2006, the nuisance, that's when he was classified as, that's when he received VR subjects, in 2007. And so, was that limited in 2009? And the medical care issue, I think, stops in 2009, but there's no allegation that his designation stopped in 2009, is there? Well, the point I'm making is that, despite the fact that he got his designation in 2007, if there was really any danger to Mr. Woods, he probably would have filed suit much sooner, instead of waiting until 2003. But he filed suit in 2013, almost six years later. And timeliness is important, because a claim of imminent danger, means it's forced, and there's more time elapses between dependent action, or inaction. Well, why can't we, I mean, why, isn't it possible that, starting in 2011, files became more available to other inmates, or in 2012, people started understanding what they are meant to be? The fact that he was designated, is only one of the components of the risk he's alleged to have met. But we're still getting, sort of, this general risk of harm to inmates, in general. And, if the statute's pretty clear, that you've got to at least flesh some facts, to possibly show, that there's some present threat to your safety, that you need court intervention, right now. And, and, and, just whatever questions there is, to this rule, and, and, especially as to what state suggests as options, he can go to state court, he can file civil action, with a D-waiver, he can also seek state convenience relief, to challenge these hard subjects. And that's what we have charged Mr. Woods. Okay, thank you. Thank you. In Williams and Andrew, this court specifically stated, that, alleging that there is an ongoing harm, is sufficient. And, as long as they show that it's something that, will create imminent danger, to people, like him, specifically, are they similarly situated, if that's sufficient, and the Inspector General's report, rebuts the conclusion, the conclusion of the appellee, that the R is known, that it is something, that creates bias, both of the prison guards, and the other inmates, and puts the inmate with the R designation, at imminent risk of being assaulted, or extorted. When the AP did a search on the correctional facility, they showed that although only 15% of inmates, are sexual offenders, that they constitute, 30% of the fatalities, in prison. Which is why, his allegations, that placing, misclassifying him as a sex offender, puts him at risk. And that should be sufficient, for the, limited inquiry, of 15G, that the court should look at, to determine whether he's made the risk. And it just goes to the next step, which is, has he stated a claim to half merit? And that is why, the exception exists.
judges: Kozinski, Friedland, Arterton